

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-19-2003

# Morganroth v. Norris McLaughlin

Precedential or Non-Precedential: Precedential

Docket No. 02-2087

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Morganroth v. Norris McLaughlin" (2003). *2003 Decisions*. Paper 410.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/410

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed May 30, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2087

MORGANROTH & MORGANROTH, a
Michigan partnership;
MAYER MORGANROTH,

Appellants

v.

NORRIS, MCLAUGHLIN & MARCUS, P.C.;
VICTOR S. ELGORT; DANIEL R. GUADALUPE;
CHARLES H. NEWMAN; DAVID C. ROBERTS;
JOHN DOE(S), I-X

Appeal from the United States District Court
For the District of New Jersey
D.C. No.: 00-cv-4139
District Judge: Honorable Garrett E. Brown, Jr.

Argued: April 10, 2003

Before: BARRY and ROSENN, *Circuit Judges*, and
POLLAK,* *District Judge.*

(Filed May 30, 2003)

---

* Honorable Louis H. Pollak, Senior District Judge, United States District
Court for the Eastern District of Pennsylvania, Sitting by Designation.

Thomas S. Howard, Esq. (Argued)
Heather W. Goldstein, Esq.
Kirsch, Gartenberg & Howard
Two University Plaza
Suite 400
Hackensack, NJ 07601
*Counsel For Appellants*

Wendy L. Mager, Esq. (Argued)
William J. Brennan III, Esq.
Smith, Stratton, Wise, Heher
 & Brennan, L.L.P.
Suite 4200
600 College Road East
Princeton, NJ 08540
*Counsel For Appellees*

## OPINION OF THE COURT

*ROSENN*, Circuit Judge.

This appeal raises thorny questions relating to the bounds of legitimate legal advocacy and transgressive participation by attorneys at law in a client's illegal conduct. The plaintiffs, Morganroth & Morganroth, a Michigan law firm, and Mayer Morganroth, Esq. ("Morganroths"), sued John Z. DeLorean in a federal court in Michigan for legal services rendered over approximately ten years. The jury returned a verdict in their favor against DeLorean and Ecclesiastes 9:10-11-12, Inc. ("Ecclesiastes"), a corporation controlled by him, in a sum exceeding six million dollars. The Michigan Court enjoined DeLorean from transferring his assets. It set aside a purported transfer to Genesis III, Inc. ("Genesis") (another corporation DeLorean controlled) of DeLorean's Lamington Farm in New Jersey as a fraudulent conveyance to hinder, delay, or defraud DeLorean's creditors.

The plaintiffs brought the instant suit against Norris, McLaughlin & Marcus, P.C. (Norris, McLaughlin), a New Jersey law firm, as well as Victor S. Elgort, Esq., and Daniel R. Guadalupe, Esq., its employees or affiliates. The

complaint alleges that they actively, knowingly, and intentionally participated in their client's unlawful efforts to avoid execution on his property. The United States District Court for the District of New Jersey dismissed the action on the ground that the plaintiffs had not alleged all of the elements of common law fraud, including misrepresentations to the plaintiffs, detrimental reliance, and cognizable damages. The plaintiffs timely appealed. We vacate and remand.

## I.

For the purposes of defendants' motion to dismiss, we must accept as true the allegations in plaintiffs' complaint and make all reasonable inferences in their favor. *Shaev v. Saper*, 320 F.3d 373, 375 (3d Cir. 2003). The statements of fact in this opinion are drawn from the allegations in the complaint.

The plaintiffs filed suit against DeLorean and Ecclesiastes in a federal district court in Michigan in February 1993, seeking a judgment for their legal services and also injunctive relief. Defendants Norris, McLaughlin and/or Elgort represented DeLorean in that action. In May 1994, DeLorean purported to convey his interests in his 430 acre Lamington Farm for a nominal sum to Genesis. Norris, McLaughlin assisted DeLorean in this transaction and in forming Genesis.

On July 11, 1994, the Honorable Anna Diggs Taylor enjoined DeLorean from transferring any assets, including Lamington Farm. Judge Taylor set aside the purported transfer of the farm to Genesis on September 12, 1994, and declared that it was a fraudulent conveyance with intent to hinder, delay, or defraud DeLorean's creditors, including the Morganroths. The Michigan jury found for the Morganroths and in February 1995 they obtained a judgment against DeLorean and Ecclesiastes, jointly and severally, in the sum of $6,228,235. A substantial amount of the judgment remains unpaid.

The complaint alleges that after the Michigan trial, DeLorean continued to take steps to obstruct the Morganroths from recovering on the judgment. In February

1995, he delivered his shares of capital stock in a Nevada corporation called CRISTINA to the United States Marshals Service to facilitate execution of a judgment in favor of DeLorean Cadillac, Inc., an Ohio corporation controlled by his brother. The Morganroths allege that this action was a fraudulent effort to obstruct them from enforcing their judgment against DeLorean's CRISTINA stock.

In April 1995, Elgort and Norris, McLaughlin prepared a deed purporting to confirm the May 24, 1994 deed conveying DeLorean's interests in Lamington Farm to Genesis. They recorded the deed with the Somerset County, New Jersey Clerk. The Morganroths allege that the defendants took this action "with the intent of defrauding [them] and aiding DeLorean in his efforts to hinder and delay [the Morganroths'] enforcement of the Michigan Judgment."

Two days after the defendants recorded the deed, the Morganroths sought to enforce the Michigan judgment in a supplementary proceeding against DeLorean and Ecclesiastes in the United States District Court for the District of New Jersey. Norris, McLaughlin and/or Elgort and/or Guadalupe represented DeLorean in the supplementary action. The Morganroths registered the Michigan judgment in the United States District Court for the Southern District of New York and served DeLorean with a restraining order to prevent him from conveying property until their judgment against him had been satisfied.

The complaint alleges that on or before June 2, 1995, Norris, McLaughlin and Guadalupe prepared a Memorandum of Life Lease in which Genesis, the purported title holder of Lamington Farm, acknowledged a preexisting life lease created in September 1987 between DeLorean, as lessor, and DeLorean, as guardian for his children, as lessee. The Memorandum was created after the entry of the Michigan judgment. The purported lease concerned all or a portion of Lamington Farm, including a mansion house, several additional dwelling units, and other buildings. The Morganroths allege that the life lease was a fiction and that Norris, McLaughlin and Guadalupe knew it was; the defendants created the Memorandum in a fraudulent

attempt to obstruct plaintiffs' enforcement of the Michigan judgment.

Two weeks before DeLorean was to be deposed, Norris, McLaughlin recorded the purported life lease Memorandum with the Somerset County Clerk. Norris, McLaughlin subsequently prepared and recorded a corrective deed, again purporting to transfer DeLorean's interest in Lamington Farm to Genesis. On August 3, 1995, Norris, McLaughlin wrote a letter to the Somerset County Clerk. The letter enclosed a copy of Judge Taylor's November 3, 1994 order dissolving the July 11, 1994 preliminary injunction order. According to the complaint, Norris, McLaughlin misrepresented to the Clerk that the November 3, 1994 order had the effect of dissolving Judge Taylor's September 12, 1994 order which had set aside DeLorean's fraudulent conveyance of Lamington Farm to Genesis. The Clerk relied on this deceptive letter and entered into the public record erroneous marginal notations of the purported dissolution of Judge Taylor's September 12, 1994 order.

In January 1996, the United States District Court for the District of New Jersey issued on the Morganroths' behalf a writ of execution in the supplementary proceeding. This writ included in the execution, *inter alia*, Lamington Farm, certain personal property, and the CRISTINA shares. Elgort privately contacted the attorney representing DeLorean Cadillac, which was controlled by DeLorean's brother. Elgort asked the attorney not to contact the Morganroths or the Marshal in connection with some furniture described in the writ of execution that was being removed by John DeLorean to a warehouse owned by DeLorean Cadillac for the purpose of escaping plaintiffs' writ of execution. The instant defendants did not disclose to the District Court at the time they moved for and argued the motion to vacate the plaintiffs' writ of execution that DeLorean had delivered the CRISTINA shares to the Marshal to facilitate the execution by DeLorean Cadillac on its writ.

Based on the transfers, Norris, McLaughlin and Guadalupe argued that the CRISTINA shares and Lamington Farm were not subject to the plaintiffs' writ of execution. Plaintiffs allege that Norris, McLaughlin and

Guadalupe knew, or should have known, that these transfers were made by DeLorean and others with the intent to hinder, delay, and defraud the plaintiffs. On October 3, 1996, the District Court denied the motion and found that Judge Taylor's September 12, 1994 order setting aside DeLorean's purported transfer of Lamington Farm to Genesis was a facially valid order that had not been vacated.

On April 7, 1999, the District Court issued a further writ of execution ("Second Alias Writ"). This writ included DeLorean's right to redeem Lamington Farm from Merrill Lynch Credit Corporation under an amended consent order in foreclosure proceedings brought by Merrill Lynch against DeLorean and others in the New Jersey Chancery Court ("the Redemption Rights"). Again, Norris, McLaughlin moved to vacate this writ, maintaining that DeLorean's Redemption Rights were not subject to execution based upon the previous transfers and other transactions. The Morganroths allege that defendants knew or should have known that these transactions were entered into by DeLorean and others to hinder, delay, and/or defraud the Morganroths and also knew that the New Jersey Chancery Court had held that plaintiffs could execute their judgment against DeLorean's Redemption Rights.

The District Court held in July 1999 that plaintiffs could execute the New Jersey Chancery Court's judgment against the Redemption Rights and ordered a U.S. Marshal's sale of those rights. The Morganroths allege that the defendants made every effort to hinder the sale by making arguments based on transactions that the defendants knew to be fraudulent. Additionally, plaintiffs allege that in Chapter 11 bankruptcy proceedings in the District of Maryland, Norris, McLaughlin maintained that the Redemption Rights were the property of DeLorean's children and not subject to the Second Alias Writ, although it knew that the District Court had held they were John DeLorean's property and subject to execution and sale to satisfy the New Jersey judgment.

In the instant suit, the Morganroths sued only DeLorean's lawyers in the United States District Court for the District of New Jersey.[1] Count I of the complaint alleges

---

1. The District Court had jurisdiction under a diversity theory. *See* 28 U.S.C. § 1332. The controversy is between citizens of different states.

that defendants conspired to commit fraud. It alleges that defendants agreed to make misrepresentations and omissions to defraud the plaintiffs; they took tortious steps in furtherance of those agreements, causing actual and consequential damages including attorneys' fees and expenses involved in recovering on the Michigan judgment. In Count II, the Morganroths claim that defendants knowingly aided and abetted DeLorean's acts of fraud and concealment for the purpose of hindering plaintiffs' efforts to enforce the judgment, causing actual and consequential damages. In Count III, plaintiffs assert that defendants themselves committed fraud through their knowing material misrepresentations, fraudulent concealment, and wrongful withholding of information, and that these acts and omissions proximately caused plaintiffs actual and consequential damages.

Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and the District Court granted the motion.

## II.

The District Court should only have dismissed the Morganroths' claims if they failed to allege a set of facts that would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court should have accepted all well-pleaded allegations in the complaint as true and should have viewed them in the light most favorable to the Morganroths. *See Shaev*, 320 F.3d at 375. This Court's review of the District Court's dismissal is plenary. *See Board of Trustees of Bricklayers & Allied Craftsmen Local 6 v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001).

---

Morganroth & Morganroth is a Michigan partnership with its principal place of business in Michigan. Plaintiff Mayer Morganroth is a citizen of the state of Michigan and has a principal place of business in Michigan. All the defendants are from New Jersey. The amount in controversy substantially exceeds $75,000. The District Court's March 19, 2002 order granting defendants' motion to dismiss is a final order for the purposes of 28 U.S.C. § 1291.

In their motion to dismiss, defendants argued that the Morganroths' complaint did not allege misrepresentations made by defendants or that plaintiffs relied upon any of defendants' statements to their detriment. *See* Dist. Ct. op. at 8. Thus, defendants argued, the complaint does not allege all of the elements of actionable fraud. *Id.* The District Court agreed, concluding that in the absence of allegations of material misrepresentations to the plaintiffs, reasonable reliance, and damages proximately caused by the misrepresentations, there could be no finding of common law fraud. *See id.* at 9.

Plaintiffs acknowledge that they have not stated a claim for common law fraud, but argue they did state a claim for creditor fraud under New Jersey law. They assert that they are not required to allege reliance upon statements made by the defendants to make out a cause of action for creditor fraud because New Jersey case law provides a cause of action against a judgment debtor who fraudulently obstructs enforcement of a judgment.

The tort of creditor fraud, which does not require that the plaintiff plead all of the elements of common law fraud, has not yet been recognized by the New Jersey Supreme Court. Nevertheless, the New Jersey Superior Court has explained that "[i]t is not necessary for plaintiff to show a classic case of legal fraud in order to have a viable cause of action when it is otherwise demonstrated that actions have been taken for the purposes of defrauding a creditor." *Karo Marketing Corp. v. Playdrome Am.*, 752 A.2d 341, 346 (N.J. Super. Ct. App. Div. 2000). The District Court attempted to distinguish *Karo* on the ground that it did not recognize that "a judgment creditor will be able to maintain a cause of action against a debtor's legal counsel." Dist. Ct. op. at 12 n.2. In *Karo*, a creditor won a judgment against a management company. The creditor then sued the management company's parent corporation, subsidiaries, shareholders, and lawyers to recover for various actions they took to make the management company judgment proof. *Karo* held that the creditor had stated a separate and independent claim "sounding in creditor fraud," *id.* at 345, even though the management company and its attorneys and affiliates had not made any misrepresentations to the judgment creditor.

*Karo* was based in part on *Jugan v. Friedman*, 646 A.2d 1112 (N.J. Super. Ct. App. Div. 1994). In *Jugan*, a creditor won a tort judgment against a debtor. Seeking to enforce the judgment, the creditor sued the debtor and his wife and sons as the recipients of allegedly fraudulent conveyances. The court held that the creditor was entitled to void the fraudulent conveyances made for no consideration from the debtor to his family. Moreover, the debtor's fraudulent interference with the creditor's efforts to collect constituted an independent tort entitling the creditor to damages. *Id.* at 1119; *Banco Popular North America v. Gandi*, 2003 N.J. Super. LEXIS 151, at *13 (N.J. Super. Ct. App. Div. April 29, 2003) (". . . we recognized [in *Jugan*] that [the debtor]'s efforts to interfere with Jugan's attempt to collect on his judgment debt constituted a separate, cognizable tort."). As in *Karo*, *Jugan* did not require that the plaintiff rely to his detriment on a false representation by the defendant. *Jugan*, 646 A.2d at 1119. The New Jersey Superior Court explained:

> Mr. Jugan did not undertake the present action because he was fooled by [the debtor]'s false representations. He sued to set the purported transfers aside *because* he knew they were false. Nonetheless, [the debtor]'s conduct was clearly unlawful and it is closely enough analogous to common law fraud that we have no hesitancy in ruling, as we do, that it was tortious and that Mr. Jugan is therefore entitled to recover for damage of which that tort was the proximate cause.

*Id.* at 1119-20 (emphasis in original). Additionally, Jugan was entitled to recover the attorney's fees incurred in litigation with the debtor's wife and sons that were made necessary by the debtor's interference.

The District Court in this case rejected the Morganroths' argument that they had stated a claim for creditor fraud. The Court reasoned that *Karo* and *Jugan* do not support a general cause of action against a debtor's attorney when the plaintiffs do not allege reliance on the attorney's misrepresentations. *See* Dist. Ct. op. at 11. The District Court acknowledged that one of the defendants in *Karo* was the debtor's attorney, but reasoned that the *Karo* plaintiffs

alleged with greater specificity than the plaintiffs do here that the attorney was actively involved in creating and executing the scheme. The District Court characterized the Morganroths' complaint as only making "general allegations that the defendants conspired with the debtors to deprive them of their enforcement of the judgment. There are no allegations that the defendants orchestrated or devised the debtor's alleged scheme to defraud them, such as the claims against the attorney in *Karo*." *Id.* at 10. We disagree. The Morganroths' allegations amply satisfy *Karo*'s requirements.

The Morganroths have alleged facts that, if proven, would establish that the defendants went beyond the bounds of permissible advocacy; they allege that defendants were active participants and planners in the scheme to obstruct the plaintiffs' efforts to execute on their judgment. Plaintiffs allege that Norris, McLaughlin prepared a confirmatory deed that purported to transfer Lamington Farm from DeLorean to Genesis. The Morganroths assert that the defendants knew this deed to be false when they prepared it and that they did so with the intent of unlawfully aiding DeLorean in his efforts to defraud the Morganroths and to hinder and delay enforcement of the Michigan judgment.

Moreover, plaintiffs allege that on or before June 2, 1995, Norris, McLaughlin knowingly and falsely prepared a sham Memorandum of Life Lease. The sham lease purported to acknowledge the existence of a fictional 1987 lessor-lessee relationship between DeLorean as owner and DeLorean as guardian of his children as lessee. Whether a bona fide lease actually existed as of 1987 is a factual question. If it did not, and if the defendants knew it did not, they transgressed the bounds of legal advocacy and committed creditor fraud.

Plaintiffs specifically allege a number of other intentional acts in furtherance of the scam to hinder collection of plaintiffs' judgment: the defendants recorded the sham lease with the Somerset County Clerk's office; they prepared and recorded a corrective lease with the clerk's office; they wrote a letter to the clerk's office deliberately misrepresenting the effect of the September 12, 1994 Michigan court order. The defendants took no action to

correct these misrepresentations, even after the District Court denied DeLorean's motion to vacate the writ on October 3, 1996, and upheld the September 12, 1994 Michigan order.

Defendants' responses to these arguments miss the mark. For example, they argue that whether or not the existence of a life lease harmed the plaintiffs, the recording of it had no adverse effect. The Morganroths' claim is that no genuine life lease existed. Rather, it was merely a fictional invention of the defendants with the intent to hinder and defraud the plaintiffs of their judgment against DeLorean and Genesis, thereby encumbering the title to Lamington Farm. Defendants argue that the act of recording the lease did not have any effect on the plaintiffs because it merely asserted DeLorean's legal position. The truth of this statement depends on two triable facts: (1) whether the 1987 lease actually existed; and (2) whether DeLorean's lawyers knew that it did not and was merely a fiction.

The plaintiffs also allege that Norris, McLaughlin assisted in the formation of Genesis for the sole purpose of obstructing plaintiffs' efforts to enforce their judgment against DeLorean, and pursuant to such purpose engineered the conveyance of Lamington Farm to it. The defendants respond that this was done to facilitate the development of the property as a golf course. However, the transfer to Genesis was judicially determined to be a fraud by the Michigan court. Whether defendants knew or participated knowingly in the fraud is a triable issue. The defendants further argue that the transfer could not have prevented the Morganroths from collecting on their judgment because DeLorean had a 98% interest in Genesis. However, plaintiffs' allegation is that the transaction was a sham meant to hinder or delay, not that it was an insuperable obstacle to eventual recovery. The Morganroths allege that the defendants knowingly participated in this scheme to hinder or delay.

The defendants further argue that the Genesis transfer did not cause the plaintiffs to litigate with a third party because Merrill Lynch already had a superior lien on the Lamington Farm. The conveyance from DeLorean to

Genesis may or may not have affected the Morganroths' rights vis-a-vis Merrill Lynch, but it did hinder and delay plaintiffs' efforts to enforce the Michigan judgment, and it did increase their litigation costs. The defendants argue that the plaintiffs cannot show that the sham Genesis transaction harmed them unless they can prove that but for the Genesis transfer, they would have obtained the farm outright. This argument is sophistry; the plaintiffs must only allege that the defendants actively and knowingly participated in a fraudulent scheme that hindered or delayed their efforts to enforce the Michigan judgment. These efforts might not have given plaintiffs unencumbered title to the farm by foreclosure but, at least, gave them a valuable interest or title subject to the Merrill Lynch lien.

The complaint alleges that the defendants pursued an unlawful and fraudulent means of evading the writ of execution when they wrote DeLorean Cadillac's attorney requesting him not to communicate with the Marshal or with Morganroth's attorney about DeLorean's furniture. Defendants argue that the letter merely asserts DeLorean's legal position that DeLorean Cadillac has no obligation to inform the Morganroths that furniture obtained by DeLorean Cadillac pursuant to a writ of execution in another case had been moved to a warehouse. If the contents and purpose of the letter are proven at trial, this evidence would support plaintiffs' claim of creditor fraud.

The Morganroths also allege that the defendants knowingly made false representations in court proceedings regarding DeLorean's furniture and his CRISTINA shares. The allegation is that the defendants knew, or should have known, that the transfers upon which their arguments were based were shams entered into with an intent to hinder or delay and defraud plaintiffs in the execution of the Michigan judgment.[2]

---

2. Defendants implausibly argue that the Morganroths' complaint fails to satisfy Federal Rule of Civil Procedure 9(b) because it is not pled with adequate particularity. *See* Dist. Ct. op. at 8. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed.

We hold that when a complaint alleges that an attorney has knowingly and intentionally participated in a client's unlawful conduct to hinder, delay, and/or fraudulently obstruct the enforcement of a judgment of a court, the plaintiff has stated a claim under New Jersey law for creditor fraud against the attorney. This is so even if the complaint does not allege any misrepresentation by the attorney to the judgment creditor and does not allege that the creditor detrimentally relied on such misrepresentation. In this case, the Morganroths have alleged many facts which, if proven, would amply satisfy this test. Thus, the District Court's dismissal of the Morganroths' fraud claim in Count III must be vacated.

### III.

The District Court also erred when it held that the dismissal of Count III required the dismissal of the conspiracy and aiding and abetting claims. There are four elements to the tort of civil conspiracy: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages. *Naylor v. Harkins*, 99 A.2d 849, 855 (N.J. Super. Ct. Ch. Div. 1953), *modified on other grounds*, 109 A.2d 19 (N.J. Super. Ct. App. Div. 1954).

The District Court mistakenly cited *Karo* for the proposition that allegations of civil conspiracy were "adjunct" to the fraud claim. *See* Dist. Ct. op. at 13 (*citing Karo*, 752 A.2d at 348). The citation in *Karo* is to *Board of Educ., Asbury Park v. Hoek*, 183 A.2d 633 (N.J. 1962), in which the New Jersey Supreme Court explained that "[t]he gravamen of an action in civil conspiracy is not the

---

R. Civ. P. 9(b). The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim. *See Gutman v. Howard Savings Bank*, 748 F. Supp. 254, 257 (D. N.J. 1990). The fraud allegations are sufficiently particular because they allege specific actions by which defendants exceeded the bounds of advocacy and became active participants in their client's illegal scheme.

conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action. Proof of a conspiracy makes the conspirators jointly liable for the wrong and resulting damages." *Id.* at 646 (internal citations omitted). Mere agreement to do a wrongful act can never alone amount to a tort, whether or not it may be a crime. *See Rose v. Bartle*, 871 F.2d 331, 366 n.59 (3d Cir. 1989); *McAlpine v. AAMCO Automatic Transmission, Inc.*, 461 F.Supp. 1232, 1273 (E.D. Mich. 1976). Some act that is itself a tort must be committed by one of the parties in pursuance of the agreement. *See James v. Evans*, 149 F. 136, 140 (3d Cir. 1906) ("The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff.").

Not every conspirator must commit an overt act in furtherance of the conspiracy, so long as at least one does. *See Beck v. Prupis*, 529 U.S. 494, 503 (2000). Here, the Morganroths have alleged a number of overt acts committed by one or more of the conspirators in furtherance of the conspiracy, many of which would hypothetically survive the dismissal of Count III. For example, if the defendants and DeLorean agreed to the conspiracy but all the overt acts in furtherance of the conspiracy were committed by DeLorean himself, defendants would still be liable for civil conspiracy. Thus, the conspiracy count survives both because the District Court erred in dismissing Count III and because the District Court erroneously concluded that DeLorean's overt acts could not serve as the predicates for a conspiracy claim against defendants.

Likewise, the District Court erred in dismissing the aiding and abetting claim set forth in Count II. The elements of aiding and abetting are: (1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing. *Monsen v. Consol. Dressed Beef Co., Inc.*, 579 F.2d 793, 799 (3d Cir. 1978); *Elysian Fed. Savings Bank v. First Interregional Equity Corp.*, 713 F. Supp. 737, 760 (D.N.J. 1989) (interpreting *inter alia* New Jersey common law of fraud).[3] The Morganroths' complaint

---

3. There are important differences between criminal and civil approaches to aiding and abetting liability. In particular, shared intent is not

provides numerous allegations of defendants' knowing assistance to DeLorean's fraudulent schemes. The truthfulness of plaintiffs' allegations regarding the defendants' knowledge of the fraudulent nature of DeLorean's actions is a question of fact to be determined at trial.

## IV.

As a general rule in New Jersey, each party must bear its own attorneys' fees. *See, e.g.*, *Right to Choose v. Byrne*, 450 A.2d 925, 940 (N.J. 1982). An exception to this rule is that if the wrongful conduct of a tortfeasor causes a plaintiff to sue a third party, the plaintiff can recover the fees incurred in the litigation against the third party from the tortfeasor. *In re Estate of Lash*, 776 A.2d 765, 769 (N.J. 2001). In *Jugan*, the creditor was simultaneously involved in litigation with both the debtor and the recipients of the debtor's fraudulent conveyances. The court held that the creditor was entitled to recover, as damages for the debtor's interference, the attorneys' fees incurred in litigation with the transferees of the fraudulent conveyances, but not the fees incurred against the judgment debtor. Here, the situation is slightly different: plaintiffs charge that the debtor's attorneys committed fraud. The debtor's attorneys' fraud did not cause the plaintiffs to sue the debtor; it did cause them additional attorneys' fees and expenses in the suit to enforce the judgment against the debtor and in the actions to set aside the purported unlawful transfers of property and other sham transactions.

We conclude that the situation here is sufficiently analogous to *Jugan* to merit the same treatment. The defendants allegedly were both the "but for" cause and the proximate cause of the Morganroths' additional attorneys' fees. Licensed lawyers are not shielded from liability if their

---

required in the civil context in New Jersey. *See Failla v. City of Passaic*, 146 F.3d 149, 157 (3d Cir. 1998). A person is liable for harm resulting to a third person from the conduct of another when he "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . ." *Id.* at 157-58 (*quoting Restatement (Second) of Torts* § 876(b)).

conduct extends beyond the legitimate bounds of lawful representation. *See Wahlgren v. Bausch & Lomb Optical Co.*, 68 F.2d 660, 664 (7th Cir. 1934) ("One may not use his license to practice law as a shield to protect himself from the consequences of an unlawful or illegal conspiracy."); *accord Banco Popular*, 2003 N.J. Super. LEXIS 151, at *15-*16. Although the Morganroths are not entitled to attorneys' fees arising out of their original suit against DeLorean, the additional expenses in fees and costs they incurred to enforce the judgment as a result of defendants' alleged fraud are recoverable. *See Jugan*, 646 A.2d at 1120.

The District Court concluded that plaintiffs made an insufficient "blanket allegation" that they have suffered extra costs. *See* Dist. Ct. op at 10. The Morganroths' theory of damages is that the defendants proximately caused them to suffer actual and consequential damages for injury to their business or property, including but not limited to attorneys' fees and expenses incurred as a result of defendants' fraud, conspiracy to commit fraud, and aiding and abetting DeLorean's fraud. Thus, the Morganroths seek to recover attorneys' fees that they incurred as a result of defendants' unlawful conduct in furthering DeLorean's efforts. Defendants' response is that they were merely engaged in adversarial lawyering and that any expenses the Morganroths incurred in enforcing the Michigan judgment against DeLorean resulted from preexisting legitimate claims to DeLorean's assets by other parties. If these claims were legitimate or had arisen prior to defendants' representation of DeLorean, then the plaintiffs obviously would have no case. However, these are factual questions that cannot be resolved on a 12(b)(6) motion to dismiss. Thus, we hold that plaintiffs have stated a claim for damages under New Jersey law and the District Court's Order of Dismissal must be reversed.[4]

---

4. The defendants may also have violated New Jersey's Uniform Fraudulent Transfer Act, N.J.S.A. §§ 25:2-20 to 25:2-34 (UFTA), which creates a cause of action for transfers made by a debtor that are fraudulent as to a creditor

if the debtor made the transfer or incurred the obligation: a. With actual intent to hinder, delay, or defraud any creditor of the debtor;

## V.

Defendants erroneously contend that plaintiffs' claims to set aside the transfer of Lamington Farm and personal property to Genesis are barred by the statute of limitations. They argue that those claims accrued more than six years prior to the filing of this law suit. It is true that the transfer of the farm to Genesis took place May 24, 1994, and this action was not filed until August 23, 2000, more than six years later. However, plaintiffs' action against the defendants for participating in DeLorean's fraudulent scheme to avoid collection of the Michigan judgment did not accrue until the Morganroths obtained a judgment against DeLorean in the Michigan litigation. Thus, the statute of limitations runs from entry of that judgment on February 2, 1995. The statute of limitations has, therefore, not run on any of the plaintiffs' claims in this lawsuit.[5] Moreover, many of defendants' allegedly fraudulent acts and omissions took place within the time limitations period and others have been previously judicially determined. For example, Judge Taylor already held that the transfer of Lamington Farm from DeLorean to Genesis was a fraudulent conveyance. To the extent that the fraudulent nature of that transaction is necessary as a predicate to the

---

> or b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. § 25:2-25. However, the remedies directly under the UFTA are limited. *See* N.J.S.A. § 25:2-29. Thus, plaintiffs must rely upon the tort of creditor fraud articulated in *Karo* and *Jugan* to pursue damages for additional attorneys' fees incurred.

5. The Morganroths first address the statute of limitations question in their reply brief. The defendants raised the question in their brief. The reply brief was the appropriate time for the Morganroths to address the question because plaintiffs could not be expected to have anticipated that the defendants would raise the statute of limitations defense on appeal since it was not ruled on in the District Court.

Morganroths' other allegations, defendants cannot now argue that it was not fraudulent.[6]

## VI.

The District Court's order granting defendants' motion to dismiss entered March 20, 2002 will be vacated as to all three counts alleged in plaintiffs' complaint and the case will be remanded for further proceedings consistent with this opinion. Costs taxed against the defendants.

A True Copy:
        Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*

---

6. Plaintiffs also assert that the continuing violation theory tolls the statute of limitations. *See Fowkes v. Penn. R.R. Co.*, 264 F.2d 397 (3d Cir. 1959). However, this theory does not apply when plaintiffs are aware of the injury at the time it occurred. *See Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986). The Morganroths successfully contested the transfer of Lamington Farm to Genesis during the Michigan action, demonstrating that they were aware of the injury at the time and precluding resort to the continuing violation theory of tolling.