**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3669
_____

AKHI RAHEEM MUHAMMAD,

Appellant

v.

COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA;
COMMONWEALTH COURT OF PENNSYLVANIA;
SUPREME COURT OF PENNSYLVANIA;
PENNSYLVANIA SUPERIOR COURT
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 09-cv-01255)
District Judge:  Honorable Joy Flowers Conti
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 11, 2012

Before:  SLOVITER, SMITH and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 15, 2012)

_____

OPINION
_____

PER CURIAM

Appellant Akhi Raheem Muhammad, proceeding pro se, appeals from the District Court's order granting the defendant-appellees' motion to dismiss Muhammad's complaint under 42 U.S.C. § 1983. For the reasons that follow, we will affirm in part, vacate in part, and remand for further proceedings.

I

In July 2008, Muhammad -- an experienced litigant -- filed in the United States District Court for the Eastern District of Pennsylvania a complaint under 42 U.S.C. § 1983, alleging that some 200 defendants violated his civil rights. He sought, inter alia, permanent injunctive relief requiring the Pennsylvania state courts to address the needs of disabled litigants, as well as damages and court costs. As Judge Padova of the Eastern District noted, Muhammad's second amended complaint, which was nearly 70 pages long, stemmed from at least seven discrete series of occurrences, including:

> (1) a 2004 automobile accident in Pittsburgh and related litigation in Allegheny County from 2004 to 2007; (2) the issuance of two traffic citations in Millvale, Pennsylvania[,] in 2005, and related litigation in Allegheny County from 2005 to 2007; (3) a legal malpractice lawsuit initiated in Allegheny County in July 2005, and related litigation there from 2005 to 2007; (4) a second legal malpractice lawsuit initiated in Allegheny County in September 2005 and related litigation there from 2005 to 2008; (5) the revocation of [Muhammad's] car insurance and related litigation from 2007 to 2008; (6) the forced removal of [Muhammad's] kufi, a religious head covering, at legal proceedings in the courtrooms of various Allegheny County judges . . . between 2004 and 2008; and (7) a 2009 lawsuit against Allegheny County Adult Probation and Parole over some money [Muhammad] paid them to secure the release of his incarcerated nephew.

2

D. Ct. Doc. No. 88, 2-3 (internal citations omitted).

In particular, Muhammad alleged that most of the defendants, including the Allegheny County Court of Common Pleas, the Pennsylvania Commonwealth Court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court (collectively, "the Pennsylvania court defendants"), violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 791, *et seq.*, by repeatedly failing to reasonably accommodate his impaired vision at various stages during his numerous state court lawsuits.[1] Muhammad asked the courts to provide him with a device which could magnify and project small text. According to his complaint, Muhammad was unable to meaningfully participate in his Pennsylvania state court hearings or review records at the courthouses because, with only a few exceptions, he was not afforded equipment that would allow him to read documents relevant to his case.

Because Muhammad was proceeding in forma pauperis, Judge Padova screened his complaint for legal sufficiency pursuant to 28 U.S.C. § 1915(e), and concluded that Muhammad's ADA and RA claims against the four Pennsylvania state court defendants sufficiently stated claims upon which relief could be granted. Muhammad's ADA and RA claims against the Pennsylvania state court defendants were then transferred to the

---

[1] Muhammad's complaint and his various other filings are riddled with invectives, and he accuses all defendants of being racist, corrupt, asinine, anti-Islamic, and prejudiced against the disabled.

3

United States District Court for the Western District of Pennsylvania, where venue was proper.[2]

Upon transfer to the Western District, the Pennsylvania court defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). The Magistrate Judge prepared a report and recommendation concluding that all of Muhammad's claims based on conduct occurring before July 30, 2006, i.e., more than two years before he filed his complaint, were time-barred, and that he had not demonstrated a series of continuing violations that would operate to toll the statute of limitations. The report and recommendation further stated that, notwithstanding Judge Padova's earlier analysis, Muhammad's complaint failed to state a claim upon which relief could be granted. The District Court agreed, adopted the Magistrate Judge's report and recommendation, and granted the motion to dismiss over Muhammad's objections. Muhammad then timely filed a notice of appeal.

II

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's decision to dismiss Muhammad's complaint. See Dique v. N.J.

---

[2] The Eastern District then dismissed all other claims against the remaining defendants, save for Muhammad's ADA and RA claims against the Pennsylvania Department of Insurance. Thereafter, the Pennsylvania Department of Insurance filed a motion for summary judgment, which the District Court granted. See E.D. Pa. Civ. No. 08-cv-03616 (order entered December 13, 2010). Muhammad appealed that decision, but his appeal was dismissed for failure to file a brief. See C.A. No. 11-1075 (order entered April 27, 2011).

4

State Police, 603 F.3d 181, 188 (3d Cir. 2010). "In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009) (internal citation and quotation marks omitted). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

At the outset, we note that, in his brief, Muhammad challenges a number of orders issued by Judge Padova while his complaint was before the Eastern District. Muhammad had the opportunity to challenge those decisions in his appeal at C.A. No. 11-1075, but he failed to pursue that appeal. He may not now take a second bite at that apple.

Turning to the District Court's decision, the District Court first concluded that all of Muhammad's claims arising from conduct occurring before July 30, 2006, were time-barred. We agree. In § 1983 cases, federal courts apply the state personal injury statute of limitations, which is two years in Pennsylvania. See Smith v. Holtz, 87 F.3d 108, 111 & n.2; 42 Pa. Cons. Stat. Ann. § 5524 (West 2004). "A [§] 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. of Del. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998). The determination of the time at which a claim accrues is an objective inquiry; the relevant

5

question is what a reasonable person should have known. See Barren v. United States, 839 F.2d 987, 990 (3d Cir. 1988). As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury. See United States v. Kubrick, 444 U.S. 111, 120 (1979). However, the "continuing violations doctrine" constitutes an "equitable exception to the timely filing requirement." West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995). Under this doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991). To benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts," West, 45 F.3d at 755, and the doctrine "does not apply when plaintiffs are aware of the injury at the time it occurred." Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 417 n.6 (3d Cir. 2003).

In this case, the District Court noted that Muhammad filed his complaint on July 30, 2008, and concluded that the statute of limitations barred his claims related to conduct occurring before July 30, 2006. However, Muhammad argued that the Pennsylvania court defendants' repeated denials of accommodations amounted to a series of continuing violations bringing all such conduct within the limitations period. We agree with the

6

District Court, as Muhammad's allegations make clear that he was aware at the time that each of his requests for an accommodation was denied -- beginning as early as 2004 -- that the absence of accommodations would adversely affect his ability to represent himself. The District Court correctly reasoned that "[e]ach refusal to provide [Muhammad] with the accommodations to which he claims entitlement was a complete and independent act," D. Ct. Doc. No. 101, 12, and concluded that the continuing violations doctrine did not apply because Muhammad should have been aware of each act's negative impact at the time it occurred.

We disagree, however, with the District Court's decision insofar as it dismissed Muhammad's ADA claims regarding the defendants' purported failures to reasonably accommodate him after July 30, 2006. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II of the ADA, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. See id.; Robertson v. Las Animas Cnty. Sheriff's Dep't, 500 F.3d 1185, 1193 (10th Cir. 2007). The requirements for a claim under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, are

7

the same as those under the ADA, see Helen L. v. DiDario, 46 F.3d 325, 330 n.7 (3d Cir. 1995), with the additional requirement that a plaintiff alleging a violation of the RA demonstrate that the violation was committed by a program or activity receiving "Federal financial assistance."[3] § 794(a). Further, a plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA and RA. See Wis. Cmty. Servs., Inc. v. City of Milwaukee, 465 F.3d 737, 751 (7th Cir. 2006) (en banc). To make out such a claim, a plaintiff must show that the accommodation he seeks is reasonable, see Oconomowoc Residential Programs v. City of Milwaukee, 300 F.3d 775, 783 (7th Cir. 2002), i.e., that it is "necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7).

With regard to the first element under § 12132, the District Court assumed that Muhammad is a qualified individual with a disability, based on his averment that he suffers from impaired vision as a complication of his diabetes, though the District Court expressed some skepticism about the severity of his impairment. Regardless of the District Court's concerns, viewing Muhammad's complaint in the light most favorable to him, he alleged sufficient facts to support his claim that his vision is impaired to the extent that he cannot read small text, which appears to satisfy the requirement of the ADA that he be a qualified individual with a disability. See 28 C.F.R. § 35.104 (defining

---

[3] Although we disagree with the District Court's analysis of Muhammad's ADA claims, the District Court properly dismissed Muhammad's RA claims, as he failed to allege any facts showing that the Pennsylvania court defendants receive federal funding.

a disability as, inter alia, visual impairments).

Muhammad was next required to demonstrate that he was excluded from the benefits of some public entity's services, programs, or activities. The District Court's analysis with respect to this prong is flawed in several respects. First, the District Court stated that Muhammad "failed to allege facts establishing that litigation in the state courts constitutes a program or activity within the meaning of the ADA." D. Ct. Doc. No. 101, 14. It is not clear what "facts" the District Court expected Muhammad to allege in that regard, as courts have recognized a due process right to meaningfully participate in civil litigation, the violation of which is actionable under the ADA. See, e.g., Lane v. Tenn., 315 F.3d 680, 682 (6th Cir. 2003) ("Among the rights protected by the Due Process Clause of the Fourteenth Amendment is the right of access to the courts. . . . Parties in civil litigation have [a] . . . due process right to be present in the courtroom and to meaningfully participate in the process unless their exclusion furthers important governmental interests."), aff'd, 541 U.S. 509 (2004).

Next, the District Court faulted Muhammad for "failing to allege facts establishing that the absence of [the requested] equipment was unreasonable in the circumstances, or that it impaired his ability to litigate effectively." The District Court's analysis is problematic because Muhammad was not required to make any showing that the denial of the requested accommodations was unreasonable. Rather, he bore the initial burden of demonstrating that his requested accommodations were reasonable, i.e., necessary to

9

permit his meaningful participation; upon making such a showing, the burden shifted to the defendants to demonstrate that the requested accommodations were unreasonable. See Oconomowoc, 300 F.3d at 783 (citing Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains, 284 F.3d 442, 457 (3d Cir. 2002)).

The District Court's latter point -- that Muhammad failed to allege sufficient facts showing how he was excluded from meaningful participation -- is only partially correct. The District Court correctly pointed out that Muhammad offered no facts to support his contention that he was not able to meaningfully participate in certain motions hearings that did not appear to involve reading, such as a motion to compel discovery, and that those allegations were therefore insufficient under Iqbal. However, the District Court's reasoning does not appear to hold water with regard to some of Muhammad's other allegations, such as his inability to review records on appeal so as to prepare arguments and filings. Even if his pro se complaint did not spell out the impact of each denial of an accommodation, the complaint makes clear that, on at least some occasions, Muhammad was unable to participate in the manner a non-visually impaired individual could because he was not provided with an assistive device.[4]

---

[4] Relatedly, the District Court noted that Muhammad's argument that his ability to litigate was impaired was undercut by his statement that he has successfully litigated on his own behalf for more than 20 years. However, the District Court read his statement out of context, as it was intended to show that Muhammad has successfully litigated in other states' courts, where he was provided assistance to compensate for his visual impairment, in contrast to his experience in Pennsylvania's courts, where

The District Court also faulted Muhammad for failing to "articulate any theory that would impose liability on the Courts as institutional defendants." D. Ct. Doc. No. 101, 16. However, the ADA imposes liability on any "public entity," § 12131, which is defined as "any State or local government; [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ." § 12131(1). Thus, the plain language of the ADA subjects state courts to liability for violations of the statute. Accord Galloway v. Super. Ct. D.C., 816 F. Supp. 12, 19 (D.D.C. 1993) ("The Superior Court and the District of Columbia are public entities within the meaning of the [Americans with Disabilities] Act.").

Finally, the District Court determined that Muhammad's complaint failed to include sufficient facts to demonstrate that he was excluded from participating in his state court proceedings "by reason of" his disability. A failure-to-accommodate claim differs from other ADA claims in that the ADA does not require a failure-to-accommodate plaintiff to show that his injury was the result of purposeful discrimination. See Good Shepherd Manor Found., Inc. v. City of Momence, 323 F.3d 557, 561-62 (7th Cir. 2003). Rather, the ADA's "by reason of" language requires a showing of causation: the plaintiff must demonstrate that, but for the failure to accommodate, he would not be deprived of the benefit he seeks. See id. In this case, the District Court concluded that because Muhammad failed to allege facts showing that he was the victim of intentional

_____

his inability to receive accommodations has purportedly stymied his ability to litigate effectively. See D. Ct. Doc. No. 99, ¶¶ 3-4; D. Ct. Doc. No. 103, 5.

11

discrimination, he failed to state a claim upon which relief could be granted. Because Muhammad was only required to allege that he was unable to meaningfully participate in his cases because he did not receive accommodations -- a requirement that he appears to have satisfied -- the District Court's rationale and conclusion appear incorrect.

In sum, although the District Court correctly concluded that a number of Muhammad's claims were time-barred or failed to state a claim upon which relief could be granted, the District Court erred in dismissing Muhammad's ADA claims for purported violations occurring on or after July 30, 2008.

Accordingly, we will affirm in part, vacate in part, and remand for further proceedings. The District Court may wish, on remand, to revisit Muhammad's request for appointment of counsel.