**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-3823
_____

JENNIFER BENNETT, on her own behalf and as
Parent and Natural Guardian of Minor Child A,
a Minor and Minor Child B, a Minor,

Appellant.

v.

SUSQUEHANNA COUNTY CHILDREN & YOUTH SERVICES;
SUSQUEHANNA COUNTY

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 3-12-cv-01912)
District Judge:  Honorable Malachy E. Mannion

Submitted under Third Circuit LAR 34.1(a)
on September 11, 2014

Before:  RENDELL, GREENAWAY, JR. and SLOVITER Circuit Judges

(Opinion filed: October 22, 2014)

**RENDELL**, <u>Circuit Judge</u>:

Plaintiff-Appellant Jennifer Bennett sued Defendants-Appellees Susquehanna County Children & Youth Services ("SCC&YS") alleging nine civil rights violations under 42 U.S.C. § 1983, one violation of the Juvenile Act under 42 Pa. Cons. Stat. § 6301, and one claim for punitive damages. The District Court for the Middle District of Pennsylvania granted defendants' motion to dismiss and denied Bennett's motion for leave to file her deposition transcript. Bennett appeals the District Court's ruling on ten of her eleven counts, and we will affirm.

## I. Background

Bennett is a mother of two minor children. In November 2009, one of her children was taken to the emergency room where doctors noticed questionable bruising. X-rays revealed a fracture, and the hospital contacted SCC&YS, a state agency that protects children from neglect and abuse. SCC&YS placed both children under a safety plan and sent them to live with Allison Reaves, the children's paternal grandmother. Bennett claims that, when trying to regain custody of her children, she was intimidated by defendants who stated she would "never see them [her children] again." (App. Br. at 8). Bennett finally regained custody of her children on December 30, 2011.

---

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Bennett filed suit in the District Court on September 25, 2012, and defendants filed a motion to dismiss which was, in large part, based on the statute of limitations. While the motion was pending, paper discovery commenced and Bennett's deposition was taken. In her deposition, Bennett alleged deception, coercion, and intimidation by defendants. Subsequently, Bennett filed a motion for leave to file her deposition transcript. Bennett also claimed the statute of limitations should be tolled under federal equitable tolling principles and/or the continuing violations doctrine, and noted that her deposition offered further support for these arguments. The District Court granted defendants' motion to dismiss with prejudice as to ten of the eleven counts, one without prejudice, and denied Bennett's motion for leave to file her deposition transcript.

Bennett now appeals the denial of her motion to file her deposition transcript and the granting of defendants' motion to dismiss, claiming the District Court wrongfully granted the motion to dismiss by not considering all of the evidence which should have been properly before it. Our standard of review is plenary, and we view the facts in the light most favorable to the non-moving party.[1] *Gwynn v. City of Philadelphia*, 719 F.3d 295, 297 (3d Cir. 2013).

## II. Discussion

"Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose,* 589 F.3d 626, 634 (3d Cir. 2009). The limitations period for a

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

§ 1983 action is the limitations period for personal injury torts in the state where the cause of action arose. *Wallace v. Kato,* 549 U.S. 384, 387 (2007). Pennsylvania, which is where Bennett's cause of action arose, has a two-year statute of limitations. *See Kach,* 589 F.3d at 634 (citing 42 Pa. Cons. Stat. § 5524(2)).

Bennett's cause of action for all claims accrued at the time of the alleged unlawful seizure and withholding of her two minor children on November 18, 2009.[2] Bennett did not file suit until September 25, 2012, well beyond the two year limit. Therefore, Bennett's claims are untimely unless the statute of limitations is tolled under federal equitable tolling principles, or the continuing violations doctrine applies. However, neither is applicable to Bennett's case.

## A. Federal Equitable Tolling Principles

This Court has noted three circumstances in which federal equitable tolling is appropriate: "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." *Lake v. Arnold,* 232 F.3d 360, 370 n.9 (3d Cir. 2000).

---

[2] Bennett states counts one to nine occurred "on or about November 18, 2009." For count nine, Cruel and Unusual Punishment Inflicted and Intentional Infliction of Emotional Distress, Bennett states this claim arose from the "conduct of the Defendants, either individually and/or jointly as described above." (Appendix Vol. II of App. Br. at 33a). Since the conduct described above commenced on November 18, 2009, so too did the cause of action for cruel and unusual punishment inflicted and intentional infliction of emotional distress.

The first and third circumstances are not relevant here. Bennett does assert, however, that defendants prevented her from asserting her claim due to extraordinary circumstances, namely, duress and undue influence. In order to determine whether this argument is persuasive, we must first decide which documents we may review.

Bennett would have us examine her deposition transcript to bolster her claims of inequity. We have stated that, where a district court did not review the evidence presented under a summary judgment standard, an appellate court can review such evidence in the interest of judicial economy. *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 74-75 (3d Cir. 1991). However, even in review of both the pleadings and Bennett's deposition transcript, we find that Bennett's allegations and testimony do not reveal that she was prevented from asserting her claim as a result of extraordinary circumstances that would warrant equitable tolling.

Incidents that have warranted equitable tolling under the extraordinary circumstances prong include egregious attorney behavior, *Holland v. Florida*, 560 U.S. 631 (2010), preclusion of future review for death penalty cases, *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003), and, as a guardian, conspiring to deprive a mentally incompetent person of her constitutional and civil rights, *Lake*, 232 F.3d at 360. Bennett's claims do not rise to this level of severity. Bennett claimed that, when she resisted signing several safety plans, she was told "many, many, many times" that her children would be separated and placed in foster care if she did not sign the plans. (Appendix Vol. II of App. Br. at 72a-73a). These statements were not accompanied by threats of a court hearing or a petition; rather, it was Bennett's belief that the SCC&YS

5

caseworkers could take action themselves.  While perhaps difficult for Bennett, these statements do not rise to the level of severity needed to prevent her from asserting her claim as required for equitable tolling.

Bennett further argues that, if defendants' motion to dismiss was converted to a motion for summary judgment through the consideration of external evidence, the court would have considered more evidence favorable to Bennett and thus may have produced a different result.  Indeed, when a motion to dismiss is converted to a motion for summary judgment, a court can consider evidence outside the pleadings.  *Boyle,* 925 F.2d at 74-75.  However, as is evident from the foregoing analysis of the equitable tolling principle, even if the District Court had reviewed the deposition transcript, the outcome would not have changed.

## B.  Continuing Violations Doctrine

Bennett also cannot benefit from the continuing violations doctrine.  The continuing violations doctrine is most often applied in employment discrimination cases and is an "equitable exception to the timely filing requirement."  *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (internal quotations marks omitted) (quoting *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)).  The focus of the continuing violations doctrine is on affirmative acts of the defendants that are unlawful.  *Id*. at 293.  Courts consider two factors in determining whether to apply the continuing violations doctrine: (1) whether the violations were related in subject matter and (2) whether the acts were

6

recurring. *Id.* at 292.[3] In considering the frequency of the acts, courts have not set a standard for how close the acts must occur to amount to a continuing violation. *Id.* at 295. Previously, we have found that when incidents are alleged to have occurred consistently and with increased frequency over a four-year period, this has satisfied the second prong of the continuing violations doctrine. *West*, 45 F.3d at 755-56 (associating consistency with plaintiff's daily exposure to offensive material).

Bennett's claims of duress are related to the same subject matter, for they all deal with alleged coercion and intimidation surrounding the time period in which she sought to regain custody of her children. However, the alleged acts were not unlawful for, as stated previously, the caseworkers reiterated to Bennett that her children could be taken away from her and put into foster care, a factual possibility that could have occurred upon their finding of continued abuse.

Even assuming *arguendo* these acts were unlawful, the frequency of the defendants' alleged coercion does not rise to the level required by the continuing violations doctrine. Bennett stated that she was told "many, many" times that her children would be taken away from her but only mentions with specificity those four times she signed her children's safety plans. We must consider the affirmative acts of the defendant, not the perception of the plaintiff. Only four signed safety plans,[4] executed by

---

[3] Note that previous cases, including *Cowell*, laid out three factors, with the third requiring a showing of permanency. However, under *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 166 (3d Cir. 2013), there is no longer a permanency requirement under the continuing violations doctrine.

[4] Safety plans mentioned in Bennett's deposition include those dated November 18, 2009; February 19, 2010; April 30, 2010. Bennett also states that there was a safety plan signed

three different individuals are mentioned in Bennett's deposition. Four instances within the context of four years does not rise to a level of recurrence anticipated by the continuing violations doctrine.

Furthermore, "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from the original violation." *Cowell*, 263 F.3d at 293 (internal quotation marks omitted) (quoting *Ocean Acres Ltd. v. Dare Cnty. Bd. of Health*, 707 F.2d 103, 106 (4th Cir. 1983)). Bennett cannot point to her continued distress as indicative of a continued violation. Even assuming the defendants' alleged threats constituted unlawful acts, such "continuous violations" ended when the last alleged threat was made, a date more than two years prior to Bennett filing suit. In regards to her claim of her children's emotional distress, Bennett claims only one act, the alleged wrongful displacement of her children, resulted in their emotional distress. As such, the children's alleged emotional suffering is merely the effect of an isolated act and cannot benefit from the continuing violations doctrine.

Finally, the continuing violations doctrine is not a substitute for a plaintiff's "awareness of and duty to assert his/her rights" in a timely fashion. *Cowell* at 295. As such, the doctrine "does not apply when plaintiffs are aware of the injury at the time it occurred." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.,* 331 F.3d

---

after April 30th, since she signed one under Kim Harshaw, her last caseworker, whereas the April 30th safety plan was signed by her previous caseworker, Isaac Hobb. A Family Conference was dated May 28th, 2010, and for purposes of this analysis, we can assume this was her last interaction with a caseworker and the last possibility of a threat. While calls to Kim Harshaw are documented after this date, none of the documentation indicates threats made to Bennett.

406, 417 n.6 (3d Cir. 2003). Bennett was aware of an alleged injury[5] at the time the first safety plan was executed. Characterizing the caseworkers' statements as "threats," Bennett was distressed at this time, describing SCC&YS as putting her "through hell." (Appendix Vol. II of App. Br. at 72a, 74a). Evidence of the children's emotional distress and confusion was also documented at the time they were separated from their mother. (*See id.* at 80a, 82a, where the children expressed their dislike for visiting their mother and expressed their worry that her boyfriend would hurt them again). As such, Bennett cannot use the continuing violations doctrine to circumvent the statute of limitations when she was well aware of the alleged emotional distress at the time it occurred.

## III. Conclusion

Neither equitable tolling principles nor the continuing violations doctrine is applicable to Bennett's case; thus, her suit is untimely. We therefore will affirm the judgment of the District Court.

---

[5] Our analysis in this section has focused on Count IX, the IIED claim since it is the most ambiguous; however, for Counts I to VIII – the Procedural Due Process, Unreasonable Search and Seizure, Substantive Due Process, and Deprivation of Liberty claims – the injury was triggered by the displacement of her children, a singular, isolated event that is not continuous. As such, these counts cannot qualify under the continuing violations doctrine.