**09-1892-cv**
**Johnson v. Nextel Communications, Inc.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued:  June 8, 2010          Decided: September 26, 2011)

Docket No. 09-1892-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL S. JOHNSON, individually and on behalf of the class, DONNA DYMKOWSKI, individually and on behalf of the class, PATRICIA LONG CORREA, individually and on behalf of the class, ANTONIO SAMUEL, individually and on behalf of the class, VINCENT HALL, individually and on behalf of the class, and ANGELETTE WATERS, individually and on behalf of the class,

Plaintiffs-Appellants,

v.

NEXTEL COMMUNICATIONS, INC., a Delaware Corporation, LEEDS, MORELLI & BROWN, LENARD LEEDS, STEVEN A. MORELLI, JEFFREY K. BROWN, JAMES VAGNINI, FEDERIC DAVID OSTROVE, BRYAN MAZOLLA, SUSAN FITZGERALD, JOHN DOE 1-10 a fictitious designation for presently unknown defendants, and JANE DOE 1-10 a fictitious designation for presently unknown defendants,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:     WINTER and HALL, Circuit Judges, and CEDARBAUM, District Judge.[*]

---

[*] The Hon. Miriam Goldman Cedarbaum of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from a dismissal by the United States District Court for the Southern District of New York (George B. Daniels, <u>Judge</u>) of appellants' complaint pursuant to Fed. R. Civ. P. 12(b)(6). Appellants claim that the law firm of Leeds, Morelli & Brown, P.C., violated, <u>inter alia</u>, its fiduciary obligations by entering into an agreement with Nextel, the putative defendant in discrimination actions the law firm was hired to bring, which involved unconsentable conflicts of interest. Principally, we hold that the complaint states a claim against the law firm for breaching its fiduciary obligations to appellants. We also hold that the complaint states a claim against Nextel for aiding and abetting a breach of fiduciary duty. We therefore vacate the dismissal and remand for further proceedings.

KENNETH S. THYNE, Roper & Twardowsky, LLC, Totowa, New Jersey, <u>for Plaintiffs-Appellants</u>.

MICHAEL MCCONNELL (Traci Van Pelt, Robert W. Steinmetz, McConnell, Fleischner, Houghtaling & Craigmile, LLC, Denver, Colorado; Janice J. DiGennaro & Shari Claire Lewis, Rivkin Radler LLP, Uniondale, New York, <u>on the brief</u>), McConnell, Fleischner, Houghtaling & Craigmile, LLC, Denver, Colorado, <u>for Defendants-Appellees Leeds, Morelli & Brown, Lenard Leeds, Steven A. Morelli, and Jeffrey K. Brown</u>.

LAWRENCE R. SANDAK (Thomas A. McKinney, <u>on the brief</u>), Proskauer Rose LLP, Newark, New Jersey and New York, New York, <u>for Defendant-Appellee Nextel Communications, Inc.</u>

Jason S. Feinstein, Sterns & Weinroth, Trenton, New Jersey, <u>for Defendants-Appellees Bryan Mazolla and Susan Fitzgerald</u>.

WINTER, <u>Circuit Judge</u>:

This is an appeal from Judge Daniel's dismissal of appellants' class action complaint against Nextel Communications, Inc., the law firm of Leeds, Morelli & Brown, P.C. ("LMB"), and seven of LMB's lawyers (also "LMB"). Appellants are former clients of LMB who retained the firm to bring discrimination claims against Nextel. The class is composed of approximately 587 clients who retained LMB for the same purpose. The complaint asserts a number of claims, including one alleging that LMB breached its fiduciary duty of loyalty to them and the class by entering into an agreement with Nextel in which Nextel agreed to pay: (i) $2 million to LMB to persuade en masse its approximately 587 clients to, <u>inter alia</u>, abandon ongoing legal and administrative proceedings against Nextel, waive their rights to a jury trial and punitive damages, and accept an expedited mediation/arbitration procedure; (ii) another $3.5 million to LMB on a sliding scale as the clients' claims were resolved through that procedure; and (iii) another $2 million to LMB to work directly for Nextel as a consultant for two years beginning when the clients' claims had been resolved. None of the payments were conditioned on recovery by any of LMB's clients. We conclude that appellants have alleged facts sufficient to state a claim against LMB for, <u>inter alia</u>, breach of fiduciary duty and against

3

Nextel for aiding and abetting breach of fiduciary duty.  We therefore vacate and remand for further proceedings.

BACKGROUND

Because this is an appeal from a dismissal under Fed. R. Civ. P. 12(b)(6), we view the facts alleged in the complaint in the light most favorable to appellants.  See Faulkner v. Beer, 463 F.3d 130, 133 (2d Cir. 2006).

a) The Hiring of LMB and the Dispute Resolution and Settlement Agreement

The complaint alleges that LMB conducted a meeting at which appellants and some 587 individuals (collectively, the "claimants") hired LMB to pursue employment discrimination claims against Nextel, a Delaware corporation.  The retainer agreement with LMB, a New York law firm, was executed in New Jersey.  It is alleged that extravagant promises of recoveries against Nextel were made at the meeting.  The agreement specified a one-third contingency fee to go to LMB.

The complaint alleges that LMB never intended to bring, and never brought, any discrimination actions against Nextel.  Instead, LMB intended to follow a prior LMB practice of seeking direct payments, including payments as a legal consultant, from putative defendant-employers, in this case, Nextel.  On September 28, 2000, LMB and Nextel met in New York and signed an agreement styled the Dispute Resolution and Settlement Agreement ("DRSA").  Under the DRSA, LMB was to be paid $2 million if it persuaded the claimants to:  (i) drop all pending lawsuits and administrative

4

complaints against Nextel within two weeks (excluding already filed worker's compensation claims); and (ii) sign within ten weeks individual agreements in which each claimant agreed to be bound by the DRSA. The DRSA was to become effective on the date upon which those conditions were met (the "Effective Date"). The $2 million was to be paid to LMB within 3 days of that date.

The DRSA set forth a three-stage Dispute Resolution Process ("DRP") that was designated as the exclusive means of settlement for all claimants then represented by LMB. The first stage consisted of an interview and direct negotiation between Nextel and each individual claimant. The second stage called for non-binding mediation of any unresolved claims. The third stage called for binding arbitration of any remaining unresolved claims.

The DRSA provided that Nextel would pay another $1.5 million to LMB upon the resolution of half of the claimants' claims and a final $2 million upon resolution of the remaining claims. All claims had to be either resolved or submitted to binding arbitration within 45 weeks of the Effective Date, or Nextel would be entitled to withhold final payment from LMB and deduct $50,000 for each month that claims remained to be resolved or submitted to arbitration. The DRSA also stated that each claimant would agree to be represented by LMB throughout the DRP, to be bound by the result of the DRP and not to pursue any other relief in any other forum for any claim against Nextel, to waive

5

punitive damages and non-monetary relief, to execute a general release as a prerequisite for receiving any award, and to adhere to a confidentiality agreement concerning the DRSA.

LMB also promised not to accept any new clients with claims against Nextel, not to refer any non-claimant individual with claims against Nextel to another lawyer or law firm, and not to accept compensation for any prior referrals.  Finally, the DRSA provided that Nextel would retain LMB as a legal consultant (the "consultancy agreement") for a period of two years following the resolution of all claims for an additional consultancy fee of $83,333.35 per month, or $2 million, bringing the total value of the DRSA to LMB to $7.5 million.

b) The Individual Agreements and Settlements

The complaint alleges that, in the weeks following the execution of the DRSA, LMB approached the claimants to obtain signed Individual Agreements and Pledges of Good Faith.  In the Individual Agreement, the particular claimant had to state that he or she "reviewed the [DRSA]; had the opportunity to discuss that Agreement with [LMB] or any other counsel of [his or her] choosing; and agree to comply fully with the terms of that Agreement."  With respect to the payment of legal fees, the Individual Agreements stated only that "I acknowledge and understand that . . . Nextel has agreed to pay an amount of money to [LMB] to cover the attorneys' fees and expenses, other than expert fees, that Claimants might otherwise pay to [LMB] . . . ."

6

The Pledges of Good Faith stated that, for purposes of keeping the DRSA confidential, each claimant consented to "selecting two (2) representatives in my area to maintain a copy of the [DRSA]. Upon request to either of the area representatives, claimants will be allowed to review the [DRSA]."

The six appellants, along with all but fourteen of the claimants, signed Individual Agreements and Pledges of Good Faith. The complaint alleges that, notwithstanding the statements in the Individual Agreements and Pledges of Good Faith, LMB did not allow the claimants to review the full DRSA, but rather provided only the signature page of the DRSA, the Individual Agreements, and a document entitled "Highlights of Settlement Agreement" (the "Highlights Document"). The Highlights Document outlined the major provisions of the DRSA, including the DRP, the requirement that claimants drop all pending lawsuits and complaints, the confidentiality requirement, and the consultancy agreement. The Highlights Document specifically stated that the consultancy agreement posed a conflict of interest for LMB, which the claimant agreed to waive by signing the Individual Agreement. With respect to the contractual payments to LMB, the Highlights Document stated only that "Nextel is paying each Claimant's attorneys' fees, costs, and expenses (other than expert witness fees) in consideration for each Claimant participating in the DRP and honoring all of the conditions." The document did not make any mention of the

amounts LMB was to be paid or the various conditions on those payments, as described above.

In February 2001, LMB and Nextel executed a second amendment[1] to the DRSA to account for the fourteen non-participating claimants ("Amendment 2"). In Amendment 2, LMB agreed that Nextel would reduce LMB's final payment from $2 million to $1,720,000, a reduction of $20,000 per non-participating claimant. The sum of $280,000 was to remain in an escrow account until the end of the consultancy period, at which point it would be paid to LMB minus any amount Nextel paid to defend, settle, or satisfy judgments in lawsuits by the fourteen non-participating claimants, up to $20,000 for each claimant. Between August and December 2001, all six appellants settled their disputes with Nextel through the DRP for relief not specified in the complaint.

c) <u>The Present Action</u>

On October 12, 2006, appellants filed this action, both individually and as class representatives of the remaining claimants, against LMB and Nextel in the Superior Court of New Jersey, Passaic County. Based on diversity of citizenship, LMB and Nextel removed the case to the district court for the District of New Jersey, and then filed motions to dismiss the complaint. LMB also moved to change venue to the Southern

---

[1] LMB and Nextel executed Amendment 1 on September 28, 2000, in which Nextel agreed to a limited waiver of the DRSA's confidentiality provisions in order to "obtain administrative approval of the withdrawal of all Agency Complaints. . . ."

8

District of New York. The motion was granted and the case transferred to the Southern District on September 21, 2007.

Appellants' complaint alleges that the DRSA amounted to a conspiracy between LMB and Nextel by which Nextel secretly bought LMB's loyalty through payment of the designated amounts. The complaint asserted a host of claims against LMB, including breach of fiduciary duty, commercial bribery, fraud, unjust enrichment, legal malpractice, breach of contract, unauthorized practice of law, conversion, and violation of the New Jersey RICO statute. The complaint also asserted claims against Nextel for tortious interference with contract, commercial bribery, and aiding and abetting or conspiring with LMB in its breach of fiduciary duty, fraud, legal malpractice, and breach of contract.

On March 31, 2009, the district court granted appellees' motions to dismiss for failure to state a claim against either LMB or Nextel. The court applied New York's choice of law rules and concluded that New York law governed the matter. The court held that, by signing the Individual Agreements and Pledges of Good Faith, appellants confirmed as a matter of law that they had the opportunity to review the DRSA. It concluded, therefore, that appellants failed to state a claim under New York law for breach of fiduciary duty or fraud because both claims rested on appellants' allegations that LMB failed to disclose the DRSA's compensation agreement. With respect to appellants' malpractice claim, the court found that the complaint did not contain any

9

"factual allegations regarding how [LMB] ineffectively or inadequately represented [appellants]" during the DRP. To the extent that the malpractice claims rested on the DRSA's compensation structure, the court found that appellants failed to state a claim because they did not allege that the money paid by Nextel to LMB would otherwise have gone to appellants. The court found the remainder of appellants' claims to be without merit.

This appeal followed.

DISCUSSION

Appellants have briefed on appeal the dismissal of their claims of breach of fiduciary obligation, breach of contract, fraud, malpractice, and New Jersey RICO claims. We deal with those claims after a brief discussion of choice of law.

With regard to the choice of law issues, we "review the district court's choice of law de novo." Abdullahi v. Pfizer, Inc., 562 F.3d 163, 190 (2d Cir. 2009) (internal quotation marks omitted). In this case, the district court erroneously applied New York's choice of law rules. In fact, New Jersey's choice of law rules apply because New Jersey law would have governed had there been no change of venue. See Van Dusen v. Barrack, 376 U.S. 612, 639 (1964); see also Abdullahi, 562 F.3d at 190. New Jersey applies a two-step "flexible governmental-interests analysis." Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 621 (2007).

> The first step in the analysis is to
> determine whether a conflict exists between

10

the laws of [New York and New Jersey]. Any such conflict is to be determined on an issue-by-issue basis.

If there is no actual conflict, then the choice-of-law question is inconsequential, and the forum state [here New York] applies its own law to resolve the disputed issue. If there is an actual conflict, the second step seeks to determine the interest that each state has in resolving the specific issue in dispute. The Court must identify the governmental policies underlying the law of each state and determine whether those policies are affected by each state's contacts to the litigation and to the parties. We must apply the law of the state with the greatest interest in governing the particular issue.

Id. at 621-22 (internal citations and quotation marks omitted). The parties appear to agree that there is no difference between New York and New Jersey law as to all of appellants' claims, save for the New Jersey RICO claim.[2] We vacate and remand that claim for reconsideration in light of this opinion's conclusion that New Jersey's choice of law rules apply and its discussion of the events giving rise to this action.

We turn now to the merits of the other claims briefed on appeal. "We review the district court's dismissal of a complaint for failure to state a claim de novo . . . ." Faulkner, 463 F.3d at 133. "The court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. In order to survive a motion to dismiss under

---

[2] Nextel's letter brief does not go into whether there is a difference between New York and New Jersey law, but rather maintains that New York law applies under the New Jersey choice of law rules because New York has a greater governmental interest.

11

Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

a) Fiduciary Obligation

The elements of a claim for breach of a fiduciary obligation are: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom. See Barrett v. Freifeld, 883 N.Y.S.2d 305, 308 (N.Y. App. Div., 2d Dep't 2009); accord F.G. v. MacDonell, 150 N.J. 550, 563-64 (1997).

The existence of a fiduciary duty between LMB and appellants is beyond dispute. It is also plain that, if there was a breach, it could not have been due to negligence but rather, given the nature of the DRSA and the complaint's allegations, had to be knowing and intentional on LMB's part.

Appellants contend that LMB breached its fiduciary duty to the claimants by signing the DRSA because the terms of the DRSA created a conflict of interest between LMB and its claimant clients -- a conflict that was not consentable, that is, one that could not be obviated by procuring the clients' consent. Moreover, they allege that even if the conflicts were consentable, LMB failed to properly disclose them. Appellants further argue that as a result of LMB's undisclosed conflicts of interest, their settlement awards were "unreasonably low and did

12

not approximate the true value of the[ir] claims." LMB and Nextel contend that any conflicts of interest created by the DRSA were consentable and that, as a matter of law, appellants cannot claim to have been unaware of the terms of the DRSA in light of their signatures on the Individual Agreements, which stated that appellants had reviewed the DRSA. We conclude that the conflicts were unconsentable.

The DRSA created overriding and abiding conflicts of interest for LMB and thoroughly undermined its ability to "deal fairly, honestly, and with undivided loyalty to [appellants]." Elacqua v. Physicians' Reciprocal Insurers, 860 N.Y.S.2d 229, 232 (N.Y. App. Div., 3d Dep't, 2008) (quoting Matter of Cooperman, 83 N.Y.2d 465, 472 (1994)).

The DRSA on its face created enormous incentives on LMB's part to obtain from each and every one of its clients waivers of important rights. If LMB were to cause all claimants to (i) waive their rights to jury trials and various kinds of monetary damages and non-monetary relief, (ii) drop all existing legal or administrative proceedings, (iii) agree to submit all claims to the DRP, and (iv) waive the right to hire new counsel during the DRP, LMB would be paid $2 million by Nextel even though not a single claimant had recovered anything or even begun any of the DRP steps. LMB had ten weeks to obtain these waivers.

The overriding nature of the conflict is underscored by the fact that, when fourteen of the 587 clients failed to agree,

13

Nextel's final, but pre-consultancy, payment to LMB was reduced from $2 million to $1,720,000, or $20,000 per non-agreeing client. Under the DRSA, after obtaining the waivers, LMB would be paid $1.5 million when half of the claimants' claims were resolved through the DRP, regardless of the individual outcomes. Another $2 million ($1,720,000 after Amendment 2) would be paid to LMB when the remaining claims were resolved, again without regard to individual outcomes. However, the $2 million would be reduced on a sliding scale if less than all the claims were resolved within forty-five weeks from the effective date. To become entitled to the $2 million, LMB would have to process over thirteen claims per week starting on the effective date, or over two claims per work day.

Once all the claims were processed, LMB would formally go to work for Nextel as a consultant for two years at $1 million per year. LMB also promised in the DRSA not to accept new clients with claims against Nextel, not to refer any such client to another lawyer or firm, and not to accept compensation for any prior referral.

It cannot be gainsaid that, viewed on its face alone, the DRSA created an enormous conflict of interest between LMB and its clients. Such a conflict is permissible only if waivable by a client through informed consent. See Int'l Bus. Machs, Corp. v. Levin, 579 F.2d 271, 282 (3d Cir. 1978); Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ., 722 F. Supp. 2d 295, 310-11

14

(E.D.N.Y. 2010).  However, there may be circumstances in which a conflict is not consentable.  See GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C., 618 F.3d 204, 212 n.2 (2d Cir. 2010); CenTra, Inc. v. Estrin, 538 F.3d 402, 412 (6th Cir. 2008); Cohen v. Strouch, No. 10 Civ. 7828, 2011 WL 1143067, at *2-3 (S.D.N.Y. Mar. 24, 2011).  For two reasons, this is such a case.

First, because LMB was not lead counsel in a class action, the class-protective provisions of Fed. R. Civ. P. 23 were not triggered.  See In re Agent Orange Prod. Liab. Lit., 818 F.2d 216, 222 (2d Cir. 1987) ("Fed. R. Civ. P. 23(e) . . . places the court in the role of protector of the rights of the class when such a settlement is reached and attorneys' fees are awarded.").  Therefore, LMB's clear duty as counsel to the parties seeking relief from Nextel was to advise each client individually as to what was in his or her best interests taking into account all of the differing circumstances of each particular claim.  See Ziegelheim v. Apollo, 128 N.J. 250, 260-61 (1992); Jones Lang Wootton USA v. LeBoeuf, Lamb, Greene & MacRae, 674 N.Y.S.2d 280, 284-85 (N.Y. App. Div., 1st Dep't. 1998).  The DRSA was flatly antagonistic to that duty.

On the face of the DRSA, its inevitable purpose was to create an irresistible incentive -- millions of dollars in payments having no relation to services performed for, or recovery by, the claimants -- for LMB to engage in an en masse solicitation of agreement to, and performance of, the DRSA's

15

terms from approximately 587 claimant clients.  The effectiveness of the DRSA, and therefore the payments to LMB, depended on Nextel's conclusion that a sufficient number of clients had agreed to it.[3]  Any number short of all 587, and Nextel would have no obligation to pay anything, as Amendment 2 demonstrated by reducing the final, pre-consultancy $2 million payment to LMB to $1,720,000, a reduction of $280,000, or $20,000 apiece for the fourteen clients LMB failed to deliver.  By entering the DRSA, agreeing to be bound by its terms and accepting the financial incentives available therein, LMB violated its duty to advise and represent each client individually, giving due consideration to differing claims, differing strengths of those claims, and differing interests in one or more proper tribunals in which to assert those claims.[4]  See Elacqua, 860 N.Y.S.2d at 232-33; accord Matter of Educ. Law Ctr., Inc., 86 N.J. 124, 133 (1981).

This already abiding conflict was severely aggravated by two other provisions in the DRSA: (i) the sliding scale of payments from Nextel to LMB depending on how quickly LMB's clients' claims

---

[3] The first payment to LMB was to be made within three business days of the effective date of the agreement, and the DRSA stated that the agreement would become effective once all pending legal and administrative actions were withdrawn or dismissed and all claimants had signed the Individual Agreements.

[4] We do not necessarily preclude clients from giving informed consent to some form of group treatment where manageable numbers of claimants are involved and putative defendants are not paying the claimants' lawyer to aggregate the claims.  Nor do we preclude the ordinary arms-length settlement agreement in which one party agrees to pay the costs and fees of another.  For the reasons stated, the DRSA is a far cry from such an agreement, notwithstanding transparently cosmetic language portraying it as such.

16

were resolved; and (ii) the commencement of the $2 million consulting contract and the payment of those fees, which would occur only after all the claims were resolved. Moreover, the DRSA required the claimants, LMB's clients, to waive the right to hire unconflicted counsel to pursue the claimant's recovery in the DRP. Again, LMB was being paid by Nextel in effect to ignore its duty to represent clients as individuals with differing claims and interests that might require differing amounts of time and preparation vigorously to pursue a recovery.

Finally, although Nextel agreed to pay $5.5 million with regard to the processing of LMB's clients' claims according to the DRSA's provisions, and agreed to pay LMB another $2 million to serve as Nextel's consultant, none of the payments to LMB was in any way contingent on claimant clients receiving a recovery. Any assertion by appellees, therefore, that the payments were part of a settlement that simply included LMB's clients' attorneys' fees does not meet the straight-face test.[5] See Note 4, supra.

Indeed, we express our candid opinion that the DRSA was an employment contract between Nextel and LMB designed to achieve an en masse processing and resolution of claims that LMB was

---

[5] Although the fact is in no way dispositive, we do note that the amount deducted from the final, pre-consultancy payment was to cover not only Nextel's costs and attorneys' fees, but amounts paid in settlements and judgments to the 14 non-signing claimants. Moreover, any part of the deducted amount not paid to resolve the claims of those claimants was to be paid to LMB. A trier of fact might infer from this that the $2 million payment (and all other payments for that matter) was intended to reduce Nextel's monetary exposure to settlement payments and judgments.

obligated to pursue individually on behalf of each of its clients. The only sensitivity shown to potential conflicts of interest by the DRSA is in the provisions in which LMB promises not to represent new clients, or refer new claims, against Nextel. Tellingly, this sensitivity appears aimed only at avoiding conflicts that could have an impact on LMB's new-found relationship with Nextel.

Second, we believe that, under the above circumstances, the opportunity for the claimants to give informed consent was so burdened that the DRSA is not consentable for that reason as well. Certainly, given the conflicts described above, any advice from LMB to its claimant clients could not possibly be independent advice untainted by the counter-incentives of the DRSA such that the resulting consent would be valid. The magnitude, and -- from a lay client's perspective -- complexity of LMB's conflict of interest is such that informed consent would require the hiring of an independent lawyer to review the twenty-nine page DRSA and to explain the multiple conflicts embraced by LMB, including the scheduling and amount of payments to LMB, the waiver of multiple rights, and the important and often difficult-to-analyze consequences of abandoning ongoing legal or administrative proceedings. To be sure, the claimants were allowed to consult with another attorney, but an initial attorney hired to bring a discrimination action does not fulfill his or her representational obligations by presenting a client with a

18

proposal that can be considered in an informed manner only by hiring a second attorney.

The elements of a breach of fiduciary duty are therefore met by the complaint's allegations. There was: (i) a duty; (ii) a knowing breach of the duty; and (iii) damages resulting therefrom. Barrett, 883 N.Y.S.2d at 308; MacDonell, 150 N.J. at 563-64. The existence of a fiduciary duty on LMB's part toward the claimants is undeniable. For reasons stated, there was a knowing breach. As for damages, the nature of the DRSA itself creates a presumption of damages. Neither Nextel nor LMB would have entered into it unless each believed that it would profit more by that arrangement than by one in which a law firm vigorously represented claimants as individuals. See Note 5, supra. Appellants have, therefore, plausibly alleged injury in the difference between what they received with representation by LMB under the DRSA and what they would have received if represented by unconflicted counsel. Whether other measures of damages, such as disgorgement, are available must await further proceedings.

Appellants also allege that Nextel is liable for aiding and abetting LMB in the breach of its duties to appellants. Both New Jersey and New York authorize civil liability for aiding and abetting the commission of a tort. "The elements of aiding and abetting [under New Jersey law] are: (1) the commission of a wrongful act; (2) knowledge of the act by the alleged

19

aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing." Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 415 (3d Cir. 2003). "A claim for aiding and abetting a breach of fiduciary duty [under New York law] requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." Kaufman v. Cohen, 760 N.Y.S.2d 157, 169 (N.Y. App. Div., 1st Dep't, 2003). Both jurisdictions look to the Restatement (Second) of Torts, which does not require wrongful intent by the third party, but only "that the third party knew of the breach of duty and participated in it." S & K Sales Co. v. Nike, Inc., 816 F.2d 843, 848 (2d Cir. 1987); Morganroth, 331 F.3d at 415 n.3; Restatement (Second) of Torts § 876(b). Like New Jersey, New York requires that the third party provide "'substantial assistance' to the primary violator." Kaufman, 760 N.Y.S.2d at 170. Because there is no actual conflict between the two definitions, New York law applies. See Lautenberg Found. v. Madoff, No. 09-816 (SRC), 2009 WL 2928913, at *16 (D.N.J. Sept. 9, 2009) (finding "no true conflict" between New York and New Jersey regarding aiding and abetting breach of fiduciary duty).

For reasons stated, appellants have adequately alleged a breach of fiduciary obligations by LMB. To sustain their claim against Nextel for aiding and abetting, they must allege facts

20

sufficient to show that Nextel knowingly provided substantial assistance to LMB by "affirmatively assist[ing], help[ing] conceal or fail[ing] to act when required to do so, thereby enabling the breach to occur." Kaufman, 760 N.Y.S.2d at 170. Appellants have easily met that burden, for reasons stated.

Viewed in the light most favorable to appellants, therefore, they have sufficiently alleged that Nextel negotiated and signed the DRSA with the knowledge, and intent, that it would undermine LMB's ability to fairly represent appellants. We therefore vacate the district court's dismissal of appellants' claim against Nextel for aiding and abetting LMB's breach of fiduciary duty.

b) Breach of Contract

The district court also erred in holding that plaintiffs failed to state a claim for breach of their original retainer agreement. In order to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages. Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004); accord Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007). We have no difficulty holding that these elements have been pled.

The district court held that LMB did not fail to perform their obligations under the contract because they negotiated the

21

DRSA with Nextel and carried out the DRP proceedings. In the court's view, those acts constituted the legal representation that LMB was obligated to provide under the retainer agreements with the appellants. But signing the DRSA is the very conduct that appellants assert was a breach of contract. Appellants allege that the retainer agreements provided that LMB would represent appellants individually but, according to the complaint, LMB simply aggregated the plaintiffs to gain a group settlement that ultimately benefitted LMB rather than the claimants. Thus, assuming the facts in the complaint to be true and relying on our earlier discussion of the DRSA and LMB's fiduciary obligations, LMB never provided the type of representation required by the retainer agreements.

The district court also stated that the settlement agreement superceded the retainer agreements, extinguishing appellants' claims for breach of the original agreements. As discussed supra, the settlement agreement was not valid because it was obtained while LMB suffered from an unconsentable conflict of interest.

c) Fraud

Appellants also claim fraud in the inducement of the retainer agreement. To state a claim for fraud in the inducement, the party must allege: (i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the

22

misrepresentation by appellants; and (iv) resulting damages. Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 488 (2007); accord Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005). In addition, the plaintiff must allege specific facts as to the fraud, including the misleading statements, speaker, time, place, individuals involved, and specific conduct at issue. Fed. R. Civ. P. 9(b); Acito v. IMCERA Grp., Inc., 47 F.3d 47, 51 (2d Cir. 1995). We believe that appellants' allegations state a claim for fraud.

The complaint alleges that the retainer agreements stated that LMB would investigate and pursue appellants' claims individually, but never intended to provide such representation. Instead, LMB intended to aggregate the claimants to negotiate a group settlement with Nextel benefitting LMB. Rule 9(b) is satisfied by the allegations that: (i) LMB conducted a specific meeting with the claimants, at which rosy promises of recovery were made and agreement to the individual retainer agreements was obtained; and (ii) LMB's actual intent was demonstrated by past agreements like the DRSA between LMB and putative defendant-employers providing for direct payments, including consulting agreements, to LMB that interfered with LMB's professional responsibilities in representing earlier clients.[6]

---

[6] Appellants also assert a fraud in the inducement claim with regard to the Individual Agreements. However, the harm to appellants from that alleged fraud is in the Individual Agreements to abide by the DRSA. Because we have invalidated the DRSA as a breach of LMB's fiduciary duty, there is no need to address this fraud claim.

23

d) <u>Malpractice</u>

For reasons stated, appellants have also sufficiently stated a claim for malpractice.

e) <u>Claims Against Nextel</u>

Finally, the district court dismissed appellants' claims against Nextel for aiding and abetting fraud, aiding and abetting breach of contract, aiding and abetting malpractice, and tortious interference of contract, relying on the dismissal of the underlying claims against LMB and appellants' consent to the terms of the DRSA.  The dismissal of these claims is also vacated, and the district court shall in the first instance reconsider any motions to dismiss those claims in light of the discussion above.

CONCLUSION

For the reasons stated we vacate and remand.